IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:19-cv-01229-LCB-LPA

| | |
|---|---|
| ANDRE FLOYD CHAMBERS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WAKE FOREST UNIVERSITY )<br>BAPTIST MEDICAL CENTER, )<br>)<br>Defendant. )<br>) | DEFENDANT WAKE FOREST<br>UNIVERSITY BAPTIST MEDICAL<br>CENTER'S OPPOSITION TO<br>PLAINTIFF'S MOTION FOR LEAVE<br>TO FILE AMENDED COMPLAINT |

Defendant Wake Forest University Baptist Medical Center ("WFUBMC") submits this Response in Opposition to Plaintiff's Motion for Leave to File Amended Complaint.

Plaintiff's arguments for leave to amend are focused entirely on the standard set by Rule 15, in particular, whether Defendant will be prejudiced by the filing of Plaintiff's Amended Complaint. But the Fourth Circuit and this Court have been very clear that when the deadline for amending a pleading has passed (as it has here), the moving party must *first* meet the "good cause" standard to amend the scheduling order under Rule 16, before reaching any of the factors typically considered under Rule 15. Specifically, the moving party must show "good cause" for why a motion to amend could not have been filed within the appropriate deadline despite the diligence of the moving party.

Plaintiff's Motion conveniently makes no mention of Rule 16, and offers no justification (or even an explanation) for the timing of the Motion, despite the fact that it

comes 13 months after the deadline to amend his pleading has passed, almost one year to the day of when counsel for the Plaintiff entered an appearance, after discovery has closed (despite two extensions of the discovery period), and thirty days after Defendant filed its dispositive motion. That is because there is no justification. Having failed to even attempt to show good cause under Rule 16, Plaintiff's motion must be denied.

Even if Plaintiff had demonstrated "good cause," and the Court were to then consider whether there are grounds under Rule 15 for leave to amend, Plaintiff is wrong in claiming that Defendant would not be unduly prejudiced. Plaintiff's contention that no additional discovery would be necessary because the standards for his new Section 1981 claim is the same as his existing Title VII claim overlooks a critical distinction between the two causes of action—*i.e.*, the scope of Plaintiff's Title VII claim is restricted temporally and substantively by his preceding administrative claim before the Equal Employment Opportunity Commission (EEOC), while a Section 1981 claim is not. In the course of this lawsuit, Plaintiff has described many alleged incidents that are not relevant to his Title VII claim because they fall outside the scope of his EEOC proceeding. But they would be relevant to his Section 1981 claim. Those incidents were not fully explored by Defendant's counsel during written discovery or depositions. If Plaintiff's Motion is granted at this late stage, Defendant would have to re-examine the discovery it has conducted, and at the very least, re-take Plaintiff's deposition and potentially other depositions. In addition to the cost of reopening and/or conducting additional depositions, as referenced in Plaintiff's motion, Plaintiff produced dozens of recordings in this matter

(estimated to be almost 100 hours) that were wholly irrelevant to his Title VII claim, but could potentially be relevant to his Section 1981 claim. If Plaintiff is permitted to amend his Complaint, those recordings would have to be authenticated for use, and their probative value fully examined and explored. Defendant would also have to expend the time and cost to reassess its motion for summary judgment, and prepare and submit a new motion once reopened discovery is complete.

While the Court need not reach the question of prejudice in view of Plaintiff's failure to demonstrate good cause under Rule 16, there is no question that Defendant would be prejudiced by the time and expense of re-conducting discovery to establish a complete record on Plaintiff's new claim. For these reasons, Plaintiff's Motion should be denied under either Rule 16 or Rule 15.

## **BACKGROUND FACTS**

On or around February 15, 2019, Plaintiff, a current employee of Defendant, filed a Charge of Discrimination with the EEOC, alleging that between June 28, 2018 and December 3, 2018 (and not indicating a continuing violation), Defendant discriminated against him on the basis of his race and gender. On September 19, 2019, the EEOC issued a Dismissal and Notice of Rights to Plaintiff, permitting him to file a lawsuit on his claims. Plaintiff, at the time unrepresented by counsel, proceeded to institute this litigation by the filing of his Complaint on December 17, 2019, solely asserting his claims under Title VII.

On May 22, 2020, the Court approved a Joint Rule 26(f) Report, setting deadlines in this matter. [Doc. No. 9]. As specifically required under Rule 16(b)(3)(A), the Court's

3

Case 1:19-cv-01229-LCB-LPA   Document 30   Filed 08/20/21   Page 3 of 14

order established a deadline for the parties to amend the pleadings. Plaintiff had until June 15, 2020 to amend his Complaint. On August 3, 2020, Plaintiff's counsel entered an appearance in this action. The parties continued engaging in extensive discovery for nearly 13 months. After the close of discovery on May 31, 2021, Defendant filed a Motion for Summary Judgment, and a supporting Memorandum of Law. [Doc. Nos. 23 and 24].

Shortly thereafter, on July 30, 2021, Plaintiff filed the instant Motion for leave to amend his pleading, to add a claim under 42 U.S.C. § 1981 (Section 1981). The Motion attached a proposed Amended Complaint. Although Plaintiff claims that the amendment is intended solely to add a Section 1981 claim, there are a few subtle changes in the facts alleged in the proposed Amended Complaint that were presumably inserted to rectify some original allegations that actually contradict Plaintiff's claim of racial discrimination. For example:

| **Original Complaint** | **Proposed Amended Complaint** |
|---|---|
| "The negligence on the part of Ms. Childers, the department of care coordination and the department of employee relations to provide equal treatment of the plaintiff's concerns/investigations as any other employee (especially his white counterparts), left the plaintiff to work in a hostile work environment. . . ." (Complaint, at p. 7) | "The failure on the part of Ms. Childers, the Department of Care Coordination and the Department of Employee Relations to provide equal treatment of the plaintiff's concerns/investigations *to that of his white counterparts* left the plaintiff to work in a hostile work environment. . . ." (Proposed Amended Complaint, at ¶ 8) (emphasis added). |
| "However, when other coworkers would call or email her, the response she would | "However, when *white* co-workers called or emailed her, she gave immediate and supportive responses." (Proposed |

4

| | |
|---|---|
| give was much more immediate and supportive." (Complaint, at p. 8) | Amended Complaint, at ¶ 12) (emphasis added). |

Clearly, at some point, Plaintiff realized that being treated differently than all other employees (regardless of their race) is not consistent with his claim of race discrimination, and appears to now attempt to change his allegation. Otherwise, the facts alleged in the Proposed Amended Complaint are substantively the same as the original Complaint.

## ARGUMENT

### I. BECAUSE PLAINTIFF'S MOTION COMES AFTER THE DEADLINE TO AMEND, PLAINTIFF MUST MEET THE GOOD CAUSE STANDARD UNDER RULE 16. HE DOES NOT EVEN ATTEMPT TO DO SO.

Plaintiff's arguments for leave to amend his motion focus entirely on the standard for leave to amend under Rule 15(a)(2). But Plaintiff completely overlooks the requirement under Rule 16 to first show good cause. "A party who requests leave to amend after the date specified in the initial scheduling order must satisfy two prerequisites. The party must first demonstrate that there is some 'good cause' why the court should not adhere to the dates specified in the scheduling order. If the party shows 'good cause' to the court's satisfaction, the party must then demonstrate that leave to amend is proper under Federal Rule of Civil Procedure 15." Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987); see also Faulconer v. Centra Health, Inc., 808 Fed. Appx. 148, 152 (4th Cir. 2020) ("Under Rule 16 of the Federal Rules of Civil Procedure, the district court was required to enter a scheduling order 'limiting the time to amend the pleadings.' Fed. R. Civ. P.

5

16(b)(1), (3)(A). And once it did so, that schedule could be 'modified only for good cause and with the judge's consent.' Fed. R. Civ. P. 16(b)(4)."); Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) ("Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."). On this first requirement, of showing good cause under Rule 16, Plaintiff does not even make an attempt.

To meet this standard under Rule 16, the moving party must show "'good cause' why the timetable cannot reasonably be met *despite the diligence of the party* seeking the extension." Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (emphasis in original); see also Faulconer, 808 Fed. Appx., at 152 ("As the district court further explained, the 'touchstone' of that good cause requirement is 'diligence.' If the movant has not been diligent in meeting the scheduling order's deadlines, then other factors – including the presence or absence of prejudice to the other party – generally will not be considered.") (internal quotations and citations omitted). As stated in Faulconer, if the moving party had not been diligent, the factors typically considered under Rule 15, such as prejudice to the non-moving party and futility of the amendment, are not even considered. Id.; see also Nourison Rug, 535 F.3d, at 299 ("Parvizian urges us to adopt a new standard, reading Rule 16(b) in light of Rule 15(a)'s liberal allowances. We refuse to do so. Because we sustain the District Court's application of Rule 16(b), there is no cause for us to address the Court's finding that amendment would be futile, which is a Rule 15(a) consideration."); Forstmann,

6

114 F.R.D., at 85 ("[P]laintiff argues that if there is a sufficient showing under Rule 15 for a pleading to be amended that showing also suffices as good cause for release from the deadline in the initial pretrial order. The court disagrees.")

Plaintiff makes no attempt to show that despite his diligence, he could not have filed his motion earlier. That is because he cannot. Even if the Court would consider that Plaintiff had initially filed his Complaint as a *pro se* litigant, Plaintiff has now been represented by counsel for over a year. Moreover, the motion is not based on any new information gleaned during the course of this action. See Forstmann, 114 F.R.D., at 87 ("Many courts have held that where the party seeking an untimely amendment knows or should have known of the facts upon which the proposed amendment is based, but fails to assert them in a timely fashion, the motion to amend is subject to denial.")[1] Thus there is no reason the amendment could not have been filed immediately. Yet Plaintiff has waited 13 months after the appropriate filing deadline, after the discovery deadline has closed, and after Defendant filed its motion for summary judgment, before attempting to amend his Complaint. He hasn't even offered an explanation, let alone a legitimate justification for the timing of his motion to amend. With less egregious delays, courts have denied motions

---

[1] To be clear, although Plaintiff was not represented during his underlying EEOC proceeding, or at the time of the filing of his Complaint, he has been represented in this action for more than a year now, and counsel has been engaged through substantially all of discovery. Nor can Plaintiff reasonably suggest that his counsel was unaware, well before the close of discovery, of the scope and nature of claims set by his EEOC Charge, as on August 27, 2020 Plaintiff produced his EEOC Charge to Defendant in discovery as well as a letter from the EEOC describing the nature and limitations of Plaintiff's allegations before the EEOC. (See Exhibit A).

to amend under Rule 16.  See e.g., Faulconer, 808 Fed. Appx., at 153 (4th Cir. 2020) ("Faulconer moved to amend his complaint to add the ADEA as a legal basis for his retaliation claim more than eight months after the scheduling order's deadline. At no point has he offered any explanation for that delay, or for why the 'scrivener's error' he describes could not have been remedied earlier. Under those circumstances, Faulconer cannot show the diligence required under Rule 16's good cause standard, and the district court did not abuse its discretion in denying his motion to amend.")  The same result is required here.

## II.     PLAINTIFF'S MOTION IS NOT JUSTIFIED UNDER RULE 15

Even if the Court does consider Rule 15(a)(2)'s standard, Plaintiff's Motion must still be denied.  Plaintiff is correct that under Rule 15, courts are to freely grant leave to amend.  But Rule 15 also provides that Courts are to do so only "when justice so requires," and courts maintain discretion to deny such a motion when that justification is lacking. Fed. R. Civ. P. 15(a)(2); see also Equal Rights Ctr. v. Niles Bolton Associates, 602 F.3d 597, 603 (4th Cir. 2010) ("Although leave to amend should be 'freely given when justice so requires,' Fed.R.Civ.P. 15(a)(2), a district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse to grant the leave without any justifying reason.")

Plaintiff's argument is that Defendant is not prejudiced by his motion because extensive discovery has already been conducted on Plaintiff's Title VII claim, and since the standard for his newly pled Section 1981 claim is the same as that for Title VII, no additional discovery is necessary.  Plaintiff's argument conveniently overlooks a key

8

distinction between Title VII and Section 1981 claims. Title VII requires any claim under the statute to not exceed the scope of the Plaintiff's EEOC Charge of Discrimination (see Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962–63 (4th Cir. 1996)), while Section 1981 has no such requirement. Indeed, Defendant devoted a section of its dispositive motion brief to make the very point that claims outside the scope of Plaintiff's EEOC Charge are improper under Title VII. (See Memorandum in Support of Motion for Summary Judgment, at 22 (subsection titled "The Harassment Claim Is Outside the Scope of the EEOC Charge.") [Doc. 24]. Thus, Plaintiff's contention that the standards are the same is a gross oversimplification of the implication of adding a Section 1981 claim at this late stage. In Royster v. Costco Wholesale Corp., 378 F. Supp. 2d 595, 606 (M.D.N.C. 2005), this Court acknowledged the similar analytical framework in Section 1981 and Title VII claims, but explained how, nevertheless, the evidentiary scope is not the same. It stated:

> Plaintiff's § 1981 claim must be analyzed separately from her Title VII claim. It is true that the analytical framework for discrimination under these two statutes is the same, as is the analytical framework for harassment. Plaintiff's § 1981 claim, however, is not confined to her EEOC charges. . . . Plaintiff's charge under § 1981 that she was subjected to harassment including a hostile working environment may deserve a more thorough examination than this same charge under Title VII. This is, of course, because Plaintiff's EEOC charge limited the scope of the Title VII examination, but not of the § 1981 examination.

9

Case 1:19-cv-01229-LCB-LPA Document 30 Filed 08/20/21 Page 9 of 14

This distinction in scope is completely overlooked by Plaintiff's claim that no additional discovery would be necessary.[2]

Claims stemming from the incidents of discrimination described in Plaintiff's EEOC Charge, alleged to have occurred between June 28, 2018 and December 3, 2018, are the only ones relevant to Plaintiff's Title VII claim. But during the course of this litigation, Plaintiff has alluded to numerous other incidents both before and after this period. For example, he claims, among other things:

- That a coworker made racial comments to him in 2017, and constantly picked at him and targeted his work (See Chambers Depo. Tr. 300:21-301:8);

- He was harassed in 2019 when his work schedule was changed (See Chambers Depo. Tr. 353:23-354:24);

- That there were numerous instances of employees making false allegations against him in 2019, 2020, and 2021, to get him fired or otherwise disciplined (See e.g., Chambers Depo. 197:15-16; 250:1-9; 263:9-264:3; 265:10-16; 271:4-8; 271:16-25);

- He was wrongfully disciplined in 2020 (See Chambers Depo. Tr. 288:1-23); and

---

[2] Section 1981's four-year statute of limitations period, is also larger than the statutory period for a Title VII claim. See 28 U.S.C.A. § 1658 (West) (Section 1981 claim subject to four year statute of limitations). Under Title VII, plaintiffs generally have 180 days to assert their claims in an EEOC Charge of Discrimination. See 42 U.S.C.A. § 2000e-5 (West) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred.") For that additional reason, the scope of potential claims are narrower than in Section 1981.

10

- He submitted several complaints in 2019, 2020, and 2021 (See Chambers Depo. Tr. 294:10-295:10).[3]

While Plaintiff referenced these, and other, incidents in his deposition, they were not fully probed as potential bases for Plaintiff's claim at his deposition due to their untimeliness and lack of relevancy to the pending claims. Had Defendant known Plaintiff was pursuing a Section 1981 claim, its approach to written discovery as well as Plaintiff's deposition, would have been very different as would the approach to its previously-filed summary judgment motion.

If Plaintiff's motion is granted, discovery would need to be reopened so that Defendant can establish a more complete record. Defendant would also have to refile its motion for summary judgment, and bear the costs associated with all those activities. See Forstmann, 114 F.R.D., at 87-88 (finding prejudice where discovery would have to be reopened, and the defendant would have to resubmit its motion for summary judgment). As for trial, even with a date not set, there is no doubt that with the amendment, the parties would not be prepared for trial as soon as they might have been otherwise.

## CONCLUSION

For the foregoing reasons, Defendant respectfully submits that Plaintiff's Motion must be denied.

---

[3] Excerpts of the referenced portions of Plaintiff's deposition transcript are attached hereto as Exhibit B.

11

This the 20th day of August, 2021.

                                        **/s/ Kristine M. Sims**
                                        Kristine M. Sims, Bar No. 26903
                                        Email: ksims@constangy.com
                                        **/s/ Gerard M. Clodomir**
                                        Gerard M. Clodomir, Bar No. 54176
                                        Email: gclodomir@constangy.com
                                        CONSTANGY, BROOKS, SMITH
                                        & PROPHETE, LLP
                                        100 N. Cherry Street, Suite 300
                                        Winston-Salem, NC 27101
                                        Telephone: (336) 721-6849
                                        Facsimile: (336) 283-0385

                                        *Attorneys for Defendant Wake Forest*
                                        *University Baptist Medical Center*

12

Case 1:19-cv-01229-LCB-LPA   Document 30   Filed 08/20/21   Page 12 of 14

# CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that the word count for the foregoing **DEFENDANT WAKE FOREST BAPTIST MEDICAL CENTER'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** is less than 6,250 words. The word count excludes the case caption, signature lines, cover page, and required certificates of counsel. In making this certification, the undersigned has relied upon the word count of the word-processing system used to prepare the brief.

This the 20th day of August, 2021.

    **/s/ Kristine M. Sims**
Kristine M. Sims
NC State Bar No. 26903
Email: ksims@constangy.com
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
100 North Cherry Street, Suite 300
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112

*Attorney for Defendant Wake Forest
University Baptist Medical Center*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed **DEFENDANT WAKE FOREST BAPTIST MEDICAL CENTER'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Geraldine Sumter** (gsumter@fergusonsumter.com).

This the 20th day of August, 2021.

                                            **/s/ Kristine M. Sims**
Kristine M. Sims, Bar No. 26903
Email: ksims@constangy.com
CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP
100 N. Cherry Street, Suite 300
Winston-Salem, NC 27101
Telephone: (336) 721-6849
Facsimile: (336) 283-0385

*Attorney for Defendant Wake Forest University Baptist Medical Center*

14

7687128v.1

Case 1:19-cv-01229-LCB-LPA   Document 30   Filed 08/20/21   Page 14 of 14