# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CASE NO. 1:19-cv-01229-LCB-LPA

| | |
|---|---|
| ANDRE FLOYD CHAMBERS,<br><br>    Plaintiff,<br><br>v.<br><br>WAKE FOREST UNIVERSITY<br>BAPTIST MEDICAL CENTER,<br><br>    Defendant. | **DEFENDANT WAKE FOREST UNIVERSITY BAPTIST MEDICAL CENTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

While Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (hereafter "Response") continues to rely largely on his own subjective beliefs and conclusory allegations of wrongdoing, it is lacking in the competent and admissible evidentiary support required to survive summary judgment. Plaintiff also continues to fail to reconcile the central claim of this litigation – that Defendant discriminated against him on the basis of his race (Black) and gender (male) by not promoting him to a supervisor position – with the fact that it was ultimately a *black male* that was hired into the position. Such logical inconsistencies are permeated in Plaintiff's case, and he only addressed them by offering conjecture. That is not sufficient on Summary Judgment, and Defendant's Motion should therefore be granted.

### A. Plaintiff Failed to Abide by Local Rules.

Local Rule 7.2 (a)(2) requires that "[e]ach statement of fact should be supported by reference to a part of the official record in the case." Under Local Rule 56.1(d) Plaintiff is also required to "point to specific, authenticated facts existing in the record or set forth in accompanying affidavits that show a genuine issue of material fact. . . ." Several statements in Plaintiff's Statement of Facts are missing record citations**. [Response, at pp. 5-6, 8-9].** Others, while purporting to cite to the record, mischaracterize the evidence. For example, Plaintiff states: "Eglinger reported to Human Resources ('HR') that she did a lot of administrative work and relied upon Plaintiff to carry the shift." **[Doc. 28, at 2 (citing McMath's affidavit ¶18)]**. This is misleading. Paragraph 18 of McMath's Affidavit **[Doc. 24-2]** states: "During that [September 18, 2018] meeting, Mr. Chambers repeated his recount of the February 2018 problems….that the former supervisor, Ms. Eglinger (who put in her notice in May 2018 and left the Medical Center for another employer) did a lot of administrative tasks during the shift which left him to carry the shift…" (emphasis added). Plaintiff alleges that Eglinger reported to HR that she did a lot of administrative work and Plaintiff was left to carry a burden. That is untrue; it was Plaintiff who reported that himself.

### B. Plaintiff Fails to Present Competent or Admissible Evidence.

Plaintiff devoted much of his Response to repeating the same conclusory allegations in his unverified Complaint and deposition, without any supporting evidence. Plaintiff relies on his own conjecture, subjective beliefs to conclude that any perceived negative action had to be based in racial or gender animus, regardless of facts that would suggest otherwise. While speculation and conjecture might raise a mere possibility of

2

discrimination, it does not create the reasonable probability that is necessary to support an inference of discrimination, and is insufficient to withstand summary judgment. *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 241–42 (4th Cir.1982); *Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir.1988); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211 (4th Cir.1987); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985).

Where Plaintiff does cite to the record, the evidence is often inadmissible and should not be considered. Rule 56 of the Federal Rule of Civil Procedure provides that an affidavit presented in support of summary judgment must "set out facts that would be admissible in evidence" and must show that the declarant is "competent to testify to the matters stated." F.R.C.P. R. 56. *See Tuner v. Copart, Inc.*, 2018 WL 1045544, 4 (D.SC. 2018) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (holding that a declaration is improper under Rule 56 where "the statements contained therein are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law.")

Chambers' declaration, the deposition excerpts to which he cites and Megan Pinder's declaration consist largely of hearsay and/or speculation, and are not proper evidence for summary judgment. *See, e.g.*, *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("While a Title VII plaintiff may present direct or indirect evidence to support her claim of discrimination, unsupported speculation is insufficient") (internal citation omitted); Fed. R. Civ. P. 56 ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

3

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). For example, Pinder's declaration states: "I believe that Ms. McKearney targeted Plaintiff because he is a black man." [**Doc. 28-8 at ¶5**]. Pinder later states: "I felt that I was not questioned about the incident because I am a black woman…." [***Id.* at ¶19**]. These statement are nothing more than a third party's feelings and subjective belief and should be disregarded by this court as inappropriate in a summary judgment setting.

Additionally, the declaration is exactly the type of hearsay, rumor, and speculation that Rule 56 prohibits. Almost the entirety of Pinder's declaration is inadmissible hearsay and/or lacks foundation, and should be struck. [**Doc. 28, at ¶¶ 2, 3, 6, 8, 9, 11-15, 17-18, 20-21, 23-26**][1]

### C. Plaintiff's Discrimination Claims Fail as a Matter of Law.

Plaintiff argues, without citing any case authority, that he should be able to proceed under a direct evidence theory. Defendant disputes that the alleged statements identified by Plaintiff constitute direct evidence. "Direct evidence is 'evidence which, if believed, would prove the existence of a fact *without any inference or presumptions*.'" *Wray v. City of Greensboro*, No. 1:09-CV-00095, 2013 WL 4494460, at *6 (M.D.N.C. Aug. 19, 2013) (emphasis added); *Holley v. N. Carolina Dep't of Admin., N.C.*, 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012) ("Direct evidence is evidence from which no inference is required. To show race or gender discrimination by direct evidence, a plaintiff typically must show

---

[1] Interestingly, Pinder's declaration actually tends to support Defendant's position, as Pinder herself admits that two employees (Black and Hispanic females) had issues with Chambers and made their concerns known.

4

discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. Such direct evidence would include a decisionmaker's statement that he did not promote a plaintiff due to her race or gender.") Thus, Plaintiff's claims should be assessed under the *McDonnell-Douglas* framework, as discussed in Defendant's opening Brief.

But even if the two statements described by Plaintiff were to be considered as direct evidence, Defendant should still be granted summary judgment. Regarding the alleged comment by Mustamaa, he allegedly noted that not everyone was ready to have a black male social worker as a supervisor. Notably, he is never alleged to have said that he himself had an issue with placing a black male in the supervisory position. In fact, Mustamaa was one of the decision makers who placed Terrance Pleasants, *a black male*, in the supervisory position. **Chambers Depo. 315-317**[2]. The timing of this alleged conversation is also critical, it allegedly took place after Chambers filed his EEOC Charge, and therefore after Pleasants had already been hired. Indeed, in the recording provided by Plaintiff in his attempt to defeat summary judgment **[Doc 28-12]**, Mustamaa details several reasons why Plaintiff was not selected for the promotion, none of which concerned Chambers' race or gender.

The alleged comment by Childers (which she denies) is similar. Although, Chambers has been inconsistent in his recounting of the alleged comment. In his original report to McMath about the comment, he never made any connection between Childers'

---

[2] Excerpts of Chambers' Deposition cited herein are included as Exhibit 1.

5

alleged statement and the supervisory position. He reported that as part of his annual performance appraisal in regard to the prior incident with Lauren Saykora, Childers made mention of Chambers being a muscular African-American male and commented on his stature. **McMath Affidavit, Ex. D [Doc. 24-2].** Likewise, after a nearly 10-hour deposition, spanning two days, in which Chambers described numerous instances of alleged wrongdoing by Childers and other coworkers, Chambers was given no less than seven opportunities to confirm that there were no additional facts to support his claims. *See* **Chambers Depo 346:7-9; 355:23-24; 356:18-19; 358:2-3; 363:15-17; 364:1-2; 364:17-18.** Chambers did not once mention this alleged statement by Childers, let alone associate such a statement with his non-selection for the supervisor position. That he would now argue that the statement is direct evidence of his claim of discrimination is implausible.

Moreover, when he described in his EEOC Charge, Childers' reasoning for not selecting him, he did not mention this alleged comment. Chambers claimed: "The Department Manager [Childers] expressed that I was too efficient and that I would show up my teammates." Prior to his Declaration, it was only in his *unverified* Complaint that Chambers' allegations regarding the statement evolved so as to associate the alleged comment regarding Chambers' stature could be problematic in relation to the promotion decision. To the extent Plaintiff is now contradicting his earlier testimony, any such statements must be disregarded. *Wainright v. Carolina Motor Club, Inc.* 2005 WL 1168463, 11 (M.D.N.C. 2005) (declining to consider plaintiff's new averment "on summary judgment review, because its presentation after discovery violates the rule of law against the changing of testimony for the very purpose of creating an issue of fact and

6

avoiding summary judgment."); *Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir.1984)("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.") (citation and internal quotations omitted); *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir.1990)("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct .") (*quoting Barwick*, 736 F.2d at 960); *Wiley v. United Parcel Serv., Inc.*, 102F.Supp.2d 643, 653 (M.D.N.C.1999) (Court refused to consider portions of an affidavit that contradicted the plaintiff's earlier testimony).

Moreover, there is a glaring flaw in Plaintiff's logic that bears repeating: both Mustamaa and Childers ended up selecting a Black male for the Supervisor position at issue, and he remains in that role to this day.

Chambers also fails to even address the following: (1) Childers played a role in hiring him in the first place at WFUBMC; (2) Childers never disciplined Chambers, even when she found he had falsified his licensure status when applying at WFUBMC; (3) Childers gave him a good review in 2018 (the only time Childers reviewed him)[3]; and (4) Childers played a role in hiring Terrance Pleasants for the Care Coordination Supervisor position**.** *See Johnson v. Mechanics & Farmers Bank*, 309 Fed. Appx. 675, 681 (4th Cir.

---

[3] Plaintiff purports to attach his FY 2019 review by Dr. Kimball as Attachment 10; however, the same is a hodgepodge of pages from Plaintiff's reviews from 2015 forward completed by Eglinger, Childers and Kimball. **[Doc. 28-10]**

2009) (finding statements offered as direct evidence of discrimination insufficient to create a triable issue of fact, in view of totality of circumstances, including evidence contradicting claim of unlawful animus on the part of defendant); *Sanghvi v. St. Catherine's Hosp., Inc.*, 258 F.3d 570, 576–77 (7th Cir. 2001) (finding that even if statement at issue constituted direct evidence of racial discrimination – i.e., statement by defendant questioning whether plaintiff could have difficulty forming patient relationships with white women because of his race – "all of the other facts, which are basically undisputed, point to the conclusion that [plaintiff's] ethnicity played no role in the defendant's decision. . . .")

Thus, regardless of whether Plaintiff proceeds under the direct or indirect method of proof, Defendant is entitled to summary judgment as Plaintiff has failed to carry his burden of proof.

## D. Plaintiff has not Created a Material Issue of Fact Regarding his Retaliation Claim.

Much of Plaintiff's Response outlines the alleged race and gender complaints he made to HR and upper management. However, Plaintiff contradicts his own timeline of events. On page 7-8 of his Response, Plaintiff alleges that he raised concerns in February, September, October, and November of 2018 as well as almost a year later (and after his EEOC Charge and after the relevant events to this lawsuit) in August 2019, and a complaint in September 2020. **[Doc. 28]**. He purports to attach the relevant documents.[4] Then on

---

[4] Plaintiff has filed a Motion to Amend his Complaint to add a §1981 claim, that claim has not yet been added and if it is added, additional discovery and dispositive motion will be necessary. Thus, any evidence or allegations after the date of the filing of Plaintiff's EEOC Charge is irrelevant and should be disregarded or stricken by the Court.

8

page 12 of his Response, Plaintiff cites to different complaint dates (February 2018, July 2018, September 2018, October 2018, November 2018, and December 7, 2018), but fails to point to any record cite substantiating these dates/complaints. **[Id.]**

Plaintiff makes clear that his retaliation claim stems from his denial of the Care Coordination Supervisor position. **[Doc. 28, at 12]** Plaintiff also makes clear that he was informed in August 2018 that he was not selected for the position. **[Id. at 14]** Thus, the adverse employment action occurred in August 2018 – when he was informed of the alleged unlawful employment practice (in this case, his non-selection). Therefore, any complaints he allegedly made *after* the non-selection cannot be a proximate cause of the adverse employment action.

In regard to the complaints Chambers' raised in February 2018 (or at any time before he was informed of his non-selection in August 2018), Chambers has wholly and unequivocally failed to establish that any of the *decisionmakers* had knowledge that Chambers engaged in protected activity – meaning engaged in protected activity under the meaning of Title VII. In an effort to sidestep this failure, Chambers attempts to rely on his complaints to Employee Relations/Human Resources and after-the-decision-was-made communications to HR, including Wheatley (as he, in large part, recycled and resurfaced his prior complaints). But Chambers' efforts to claim the "Defendant" was aware is not enough, he must show the actual decisionmakers were aware of his protected activity[5] and

---

[5] Chambers has not established that Childers or Mustamaa had knowledge of protected activity by Chambers versus him making generalized complaints. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (noting that Title VII was not meant to be "a general civility code for the American workplace").

9

this he has failed to do. Moreover, the time period from February 2018 until August 2018 is too long to raise a causal inference. *Roberts v. Glenn Industrial Group, Inc.*, 998 F. 3d 111, 123 (4th Cir. 2021)(affirming summary judgment where plaintiff failed to provide evidence of decisionmakers knowledge regarding the alleged complaint and that three months' between the complaint and the adverse employment action was too long to establish a causal connection.)

E.    **Plaintiff has Failed to Establish that his Hostile Work Environment Claim can Survive Defendant's Motion**

Plaintiff partially quotes his EEOC Charge in an apparent attempt to mislead this Court into believing a hostile work environment/harassment complaint was reasonably related to his EEOC Charge. On page 15, Plaintiff asserts that his EEOC Charge says "My Department Manager (White/Female) and another employee (White/Female) created a hostile work environment." (Full stop). **[Doc. 28]** That is, however, not the full statement contained in the EEOC Charge **[Doc. 28-30].** The sentence reads "[m]y Department Manager (White/Female) and another employee (White/Female) created a hostile work environment that was supported by the Department Director (White/Male) to undermine my abilities to perform my duties and to have me disqualified for eligibility to be interviewed and be promoted to the Supervisor ED position (a position I was recommended for by the previous Supervisor and various hospital employees and leadership)." The Charge further concludes with "I believe I have been discriminated against and denied an opportunity to promote based upon my race (African American) and Sex (Male) in violation of Title VII of the Civil Rights Act of 1964 as amended." In investigating the

10

claim, the EEOC made clear it interpreted Chambers' charge to be an alleged discriminatory failure to promote and retaliation claim. **See Exhibit 2**. Defendant submits he is barred from pursuing his harassment/hostile work environment claim.

In any event, Plaintiff's attempt to cobble together evidence of a hostile work environment claim would still fail. "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 754 (4th Cir.), *cert. denied*, 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996). Rather, its purpose is to protect a "reasonable person" from an environment in which abuse is sufficiently severe or pervasive as to alter the conditions of his or her employment. *Id.* at 753 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 19, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), and *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

Plaintiff conveniently leaves out the fact that hours were spent investigating his claims. He purports to attach a recording establishing that when he first raised complaints about McKearney, only a cursory examination was undertaken, but Defendant submits that the recording Chambers included establishes no such thing. **[Doc. 28-28]** He continues to insist that his complaints were not treated the same, which Defendant vehemently denies. Plaintiff also notes that when White employees complained, the issues were handled differently. However, when pressed about this issue at his deposition, Plaintiff relayed a single example of a white female complaining that a white male had engaged in threatening behavior. Employee Relations conducted an investigation, found the allegations to be

11

substantiated and the while male was terminated. **Chambers Dep. at 144 – 147.** Conversely, there was no substantiation that Plaintiff had engaged in threatening behavior and both Eglinger and Childers reported that they supported Chambers in regard to the McKearney matter, of which Chambers was informed. **[Doc. 28-21]** Plaintiff's claims that his complaints were not taken as seriously or not investigated are belied by the facts and record evidence in this case. To summarize, the record evidence fails to establish an actionable hostile work environment.

## CONCLUSION

For the reasons set forth herein, and in its initial Memorandum in Support of Defendant's Motion for Summary Judgment, WFUBMC respectfully requests that this Court grant its Motion for Summary Judgment and dismiss all of Chambers' claims with prejudice.

This the 23rd day of August, 2021.

        **/s/ Kristine M. Sims**
        Kristine M. Sims, Bar No. 26903
        Email: ksims@constangy.com
        **/s/ Gerard M. Clodomir**
        Gerard M. Clodomir, Bar No. 54176
        Email: gclodomir@constangy.com
        CONSTANGY, BROOKS, SMITH
        & PROPHETE, LLP
        100 N. Cherry Street, Suite 300
        Winston-Salem, NC 27101
        Telephone: (336) 721-6849
        Facsimile: (336) 283-0385

        *Attorneys for Defendant Wake Forest University Baptist Medical Center*

# CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that the word count for the foregoing **DEFENDANT WAKE FOREST UNIVERSITY BAPTIST MEDICAL CENTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** is less than 3,125 words. The word count excludes the case caption, signature lines, cover page, and required certificates of counsel. In making this certification, the undersigned has relied upon the word count of the word-processing system used to prepare the memorandum.

This the 23rd day of August, 2021.

**/s/ Kristine M. Sims**
Kristine M. Sims
NC State Bar No. 26903
Email: ksims@constangy.com
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
100 North Cherry Street, Suite 300
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed **DEFENDANT WAKE FOREST UNIVERSITY BAPTIST MEDICAL CENTER'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Geraldine Sumter** (gsumter@fergusonsumter.com).

This the 23rd day of August, 2021.

                                                                      **/s/ Kristine M. Sims**
                                                                       Kristine M. Sims, Bar No. 26903
                                                                       Email: ksims@constangy.com
                                                                       CONSTANGY, BROOKS, SMITH
                                                                       & PROPHETE, LLP
                                                                       100 N. Cherry Street, Suite 300
                                                                       Winston-Salem, NC 27101
                                                                       Telephone: (336) 721-6849
                                                                       Facsimile: (336) 283-0385

                                                                       *Attorney for Defendant Wake Forest University Baptist Medical Center*